Azar Mouzari, Esq. (State Bar No. 263461)
**BEVERLY HILLS TRIAL ATTORNEYS, P.C.**
9350 Wilshire Blvd, Suite 203
Beverly Hills, California 90212
Tel:  310-858-5567
Fax: 310- 627-8642
Email: azar@bhtrialattorneys.com

Attorneys for Plaintiff Aderiyike Lawal
and the Proposed Class

## UNITED STATED DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADERIYIKE LAWAL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>NOBLE HOUSE HOTELS & RESORTS, L.P., D.B.A. MISSION BAY RESORT, a Texas Limited Partnership, and DOES 1-10, inclusive.<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**1) VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181**<br><br>**2) VIOLATION OF UNRUH CIVIL RIGHTS ACT (CALIFORNIA CIVIL CODE §§ 51, 52, *et seq.*)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Aderiyike Lawal ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon information and belief:

## I. NATURE OF THE CASE

1.    Plaintiff, individually and on behalf of all others similarly situated persons (hereafter "Class Members"), brings this civil rights action against Noble House Hotels

and Resorts, L.P., a Texas Limited Partnership, doing business as Misson Bay Resort, ("Defendant") seeking to put an end to the systemic civil rights violations committed by Defendant against Plaintiff.

2.  Plaintiff and Class Members are visually-impaired and legally blind persons who require screen-reading software to access and read website content using their computer. Plaintiff uses the terms "blind" or "visually-impaired" herein to refer to all people with visual impairments who meet the legal definition of blindness in that they fall within the meaning of the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("UCRA"), Cal. Civ. Code § 51, *et seq*. and have a visual acuity with correction of less than or equal to 20 x 200.

3.  Plaintiff, and Class Members, are unnecessarily denied equal access to the same online information and goods and services offered to others because Defendant's website, https://www.missionbayresort.com/ (the "Website"), and all subgroups of webpages contained in the Website are not fully accessible to screen-reading technology used by blind individuals.  This relegates visually impaired customers of Defendant to a second-class experience.  If Defendant's Website was accessible, then visually impaired individuals could independently access information relating to the pricing, description, and details of Defendant's goods and services, with the same convenience available to others.  In contrast with Defendant, many other businesses operate websites and mobile applications that are fully accessible to visually impaired individuals.

4.  Upon information and belief, Plaintiff alleges that Defendant owns, operates, markets and/or monetizes hotels, including one(s) located within California.  The hotels, which are places of public accommodation open to the public, offer various goods and/or lodging and dining services to customers.

5.  Upon information and belief, Plaintiff alleges that Defendant owns, operates, manages, updates and/or monetizes its Website, which provides to the public a wide array of services, information, goods and/or other programs relating to the brick-and-mortar locations.

6.  Defendant's Website contains significant access barriers that make it impossible for visually impaired customers to properly and fully utilize the Website. Specifically, these barriers make it impossible for Plaintiff to have full access to the Website and independently review information concerning goods/services for sale, pricing, brick-and-mortar location information and detailed information about other services offered by Defendant online.

7.  Defendant thus excludes the visually impaired from full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living.  In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life for visually impaired individuals, allowing them to fully and independently access a variety of goods and/or services, including review information concerning

goods/services for sale, pricing, brick-and-mortar location information and detailed information about other services offered by Defendant online.

8.  Despite readily available methods to render websites fully accessible to all, such as the methods in use by other businesses, which make correct and proper use of alternative text, accessible forms, descriptive links, resizable text, and labels, Defendant has failed to design, construct, maintain, and operate its Website to be fully accessible to and independently usable by Plaintiff and other visually-impaired individuals.

9.  Defendants' denial of full and equal access to its Website, and therefore denial of its services offered thereby and in conjunction with its physical location, is a violation of Plaintiff's and the Class Members' rights under the ADA and California's UCRA.

10. Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) and California's Unruh Civil Rights Act (Cal. Civil Code §§ 51-53) have provided a clear, national mandate for the elimination of discrimination against individuals with disabilities.  Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons.  Specifically, the ADA mandates that places of public accommodation, provide auxiliary aids and services to make visual materials available to individuals who are visually impaired, including Plaintiff. Under the ADA, a place of public accommodation engages in unlawful discrimination if it fails to "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied

services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii). Additionally, California state law mandates equal protection of persons with disabilities, requiring that places of public accommodation provide access to goods, services and facilities for persons with disabilities. *See* UCRA, Cal. Civ. Code § 51, *et seq*.

11. Unless Defendant remedies the numerous access barriers on its Website, Plaintiff and Class Members will continue to be unable to independently navigate, browse, use, access and/or complete a transaction on the Website, which offers various information to its customers who wish to visit Defendant's physical locations. In fact, and unless Defendant remedies the numerous access barriers on its Website, Plaintiff will be unable to visit Defendant's physical locations in person to purchase goods and/or use services offered by Defendant at those locations. At all relevant times, Plaintiff intended to visit Defendant's physical locations to purchase goods and/or use services offered by Defendant at those locations but has been unable to do so given the numerous access barriers which exist on Defendant's Website.  Because Defendant's Website is not equally accessible to blind and visually-impaired consumers in violation of the UCRA, this complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal and state law and to include monitoring of such measures, to update and remove accessibility barriers on the Website so that Plaintiff and the Class Members may be able to independently and privately use Defendant's Website.  This complaint also seeks compensatory

damages to Plaintiff and the Class Members for having been subjected to unlawful discrimination.

## II. JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.  Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367. Plaintiff's Unruh Act claims are formed from the same case and/or controversy and are related to Plaintiff's ADA claims. A violation of the ADA is a violation of the Unruh Act. (Cal. Civil Code § 51(f)).

13. This Court also has personal jurisdiction over Defendants because they conduct and continue to conduct a substantial and significant amount of business in the State of California, and because Defendant's offending Website is available across California. All events giving rise to Plaintiff's causes of action took place in California, County of Los Angeles. Therefore, jurisdiction of this Court is proper. Defendants have been and are committing the acts alleged herein in the Central District of California, and have been and are violating the rights of Plaintiff and other consumers with disabilities in this District, and have been and are causing injury to Plaintiff and the Class Members in this District.

14. Venue is proper in this Court because Plaintiff resides in this District, Defendant's

conduct and continue to conduct a substantial and significant amount of business in this District. Defendants are also subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

### III. PARTIES

15. Plaintiff, at all times relevant and as alleged herein, is a resident of California, County of Los Angeles.

16. Plaintiff is a blind, visually-impaired handicapped person. Plaintiff uses screen-reader software to access and operate websites and mobile applications. Plaintiff is knowledgeable about certain tools which allow visually impaired individuals to access websites, including various screen-reader software.

17. At all relevant times, Plaintiff intended to visit, in-person, Defendant's physical locations, to purchase goods and/or use services offered by Defendant at its brick and mortar locations.

18. Unnamed Class Plaintiffs, are, and at all times relevant herein, were residents of the State of California.  Each of these Plaintiffs encountered access barriers on Defendants' Website and were unable to use Defendants' Website, deterring him/her from visiting Defendants' brick-and-mortar location(s).

19. Plaintiff has attempted to use Defendant's Website in order to access information concerning Defendant's services, offers, goods and/or online promotions, with the intent to visit, in person, Defendant's brick-and-mortar locations.  She has been unable to access information and services offered to others through the Website.  She

desires to use Defendant's Website and has the necessary computer technology to do so if it were fully accessible to the visually impaired. Each time that Plaintiff has attempted access, she generally has attempted to visit various tabs on the Website.

20. The access barriers Plaintiff has encountered on Defendant's Website have deterred Plaintiff from visiting Defendant's brick-and-mortar location(s).

21. On at least six occasions starting in March 2024 to the present, Plaintiff attempted to access Defendant's Website in order to obtain more information about its services and/or goods using her desktop computer and/or smartphone.

22. However, when she attempted to do so, Plaintiff was, and continues to be, unable to independently and fully access information available to the general public through Defendant's Website due to the Website's communication barriers. Plaintiff could not fully and adequately access any contact information or any details related to Defendant's services from Website. Plaintiff has unfairly been denied equal access to the same online information offered to others online through the Website, and all subgroups of webpages contained in the Website, which are not fully accessible to screen-reading and text-recognition technology used by blind individuals. The access barriers Plaintiff has encountered on Defendant's Website have deterred Plaintiff from visiting all of Defendant's brick-and-mortar location(s), including specifically its locations in California.

23. Aside from wishing to go to Defendant's physical locations to make reservations, Plaintiff wished to visit Defendant's Website to review the goods and/or services and

make a reservation but on each occasion, she was unable to do so as a result of significant communication barriers that existed and continue to exist on Defendant's Website.

24. Upon information and belief, Plaintiff alleges that Defendant owns, operates, markets and/or monetizes hotels, including ones located within California. The hotels, which are places of public accommodation open to the public, offer various lodging and dining goods/services to customers.

25. Upon information and belief, Plaintiff alleges that Defendant owns, operates, manages, updates and/or monetizes its Website, which provides to the public a wide array of services, information, price lists, menus and/or other programs relating to the brick-and-mortar locations.

26. Plaintiff is informed and believes, and thereon alleges that, at all relevant times, Defendant has continuously been doing business in Los Angeles, California.

27. Plaintiff is informed and believes, and thereon alleges that Defendant is in control of the fundamental aspects of the Website which gives rise to the violations stated herein.

28. Defendants' brick-and-mortar office(s), including ones located in California, are places of public accommodation open to the public, that offer various options to customers. *See* 42 U.S.C. § 12181(7) and UCRA, Cal. Civ. Code § 51, *et seq*. Defendants' Website is a service, privilege, or advantage of Defendants' physical location(s). Through the Website, customers may review various goods and/or services,

access information concerning Defendant's services and online promotions, and detailed information concerning the brick-and-mortar locations.

29. The access barriers Plaintiff encountered on Defendant's Website have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from full access to Defendant's Website. Similarly, the access barriers Plaintiff encountered on Defendant's Website have impeded Plaintiff's full and equal enjoyment of goods and services offered at Defendant's brick-and-mortar location(s).

30. The true names or capacities, whether individual, corporate, associate or otherwise of defendants, DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sues said DOE defendants by such fictitious names.

31. Plaintiff is informed and believes, and thereon alleges that each of the defendants designated herein as a DOE is responsible for the unlawful acts as herein alleged, and Plaintiff will ask leave of the Court to amend this complaint to show its true names and capacities when same have been ascertained.

32. Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned Defendants, and each of them, were the agents, servants and employees each of the other, acting within the course and scope of said agency and employment, with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions alleged herein were made known to and ratified by each of the Defendants (including any DOE defendant).

33. Defendant and each and every DOE Defendant shall be referred to collectively as "Defendants" hereafter.

## IV. FACTUAL ALLEGATIONS

34. Plaintiff and Class Members are informed and believe, and thereon allege that Defendants operate brick-and-mortar locations that offer services and/or goods for sale to the general public.

35. The Website offers features which should allow all consumers to access the goods and services offered in connection with its brick-and-mortar locations. The Website itself is also a service offered to the public. Plaintiff and the Class Members are informed and believe, and thereon alleges that Defendants operate, maintain, update, monetize and/or own a branded Internet website located at https://www.missionbayresort.com/ for potential and existing customers to conveniently obtain information relating to Defendant's brick-and-mortar locations which include, but are not limited to, the following: information about the goods and/or services offered, online reservations, contact options, location information, pricing details, services, promotions, online offers and many other benefits.

36. Customers use Defendants' Website to access many services available at Defendants' brick-and-mortar location(s).

37. Based on information and belief, it is Defendant's policy and practice to deny

Plaintiff, along with other blind or visually-impaired users, access to Defendant's Website, and to therefore specifically deny the goods and services that are offered and integrated with Defendant's brick-and-mortar locations and otherwise.

38. Due to Defendant's failure and refusal to remove access barriers to its Website, Plaintiff and the Class Members, who are visually-impaired persons, have been and are still being denied equal access to Defendant's brick-and-mortar locations and the numerous goods, services, privileges, and benefits offered to the public through Defendant's Website, including the Website itself. In fact, and unless Defendant remedy the numerous access barriers on its Website, Plaintiff will be unable to visit Defendant's physical locations in person to purchase goods and/or use services offered by Defendant at those locations. At all relevant times, Plaintiff and the Class Members intended to visit Defendant's physical locations to purchase goods and/or use services offered by Defendant at those locations but has been unable to do so given the numerous access barriers which exist on Defendant's Website.

39. It is undisputed that the Internet has become a significant source of information for conducting business and for doing everyday activities such as shopping, banking, etc., for sighted and visually impaired individuals. When properly accessible, the Internet provides individuals with disabilities significant independence. Visually impaired individuals regularly access a broad range of accessible Internet websites through the use of screen-reader technology, which can translate visual information on a website into nonvisual formats such as synthesized speech and refreshable Braille.

40. Visually impaired individuals regularly access a broad range of accessible Internet websites through the use of screen-reader technology, which can translate visual information on a website into nonvisual formats such as synthesized speech and refreshable Braille.

41. Except for legally blind individuals whose residual vision allows them to use them to use magnification, screen reading technology is the only method which allows visually impaired individuals independent access to the Internet. In this case, Plaintiff can only access the Internet independently with the assistance of a screen-reader.

42. For the screen reader technology to function, the information on a website must be capable of being rendered into meaningful text. If the website content is constructed such that it cannot be rendered into meaningful text, visually impaired individuals are unable to access the same content available to sighted individuals because they cannot detect what is depicted on the screen and, for example, click where required to access further information and services.

43. There are well-established industry adopted guidelines for making websites accessible to visually impaired individuals. These guidelines have been in place for at least several years and have been followed successfully by other large business entities in making their websites accessible. The Web Accessibility Initiative ("WAI"), a project of the World Wide Web Consortium which is the leading standards organization of the Web, has developed guidelines for website accessibility.

44. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them.

45. These guidelines recommend several basic and easily to implement components for making websites accessible, including, but not limited to: adding invisible alt-text to graphics; ensuring that all functions can be performed using a keyboard and screen reader; ensuring that image maps are accessible; removing empty links or headings which are confusing; removing PDF documents which do not allow screen-readers to fully and properly read the text; and adding headings and links so that visually impaired people can easily navigate the site. Without these very basic components a website will be inaccessible to a visually impaired person using a screen reader.

46. In this case, based on information and belief, Plaintiff and the Class Members allege that Defendants have a policy and practice of denying the visually impaired full access to their Website, including access to the services offered by Defendants through their Website. Due to Defendants' failure and refusal to remove access barriers to their Website, visually impaired individuals have been and are being denied equal access to Defendants' brick-and-mortar location(s), as well as to the numerous services and benefits offered to the public through their Website.

47. Defendants deny the visually impaired full access to services and information made available through their Website by preventing them from freely navigating the Website.

48. Defendants' Website contains access barriers that prevent free and full use by visually impaired persons using keyboards and screen reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text or text equivalent on graphics, inaccessible forms, the lack of adequate prompting and labeling, the denial of keyboard access, empty links and headings, inability to complete important tasks using the keyboard and screen reader alone, and/or documents in PDF or other inaccessible formats, which are not fully readable or navigable using a screen reader.

49. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen reader can speak the alternative text while a sighted user sees the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on Defendants' Website that lack a text equivalent. The lack of Alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. Screen readers detect and vocalize Alt-text to provide a description of the image to a blind computer user. As a result, visually impaired customers of Defendants are unable to effectively determine what is on the Website and fully browse the site.

50. Defendants' Website also includes numerous instances of empty links and headings which prevent visually-impaired individuals from recognizing the function or purposes of links and headings contained in the Website. If a link or heading contains

no text, the function or purpose of the link or heading will not be presented to the user. This can introduce confusion for keyboard and screen reader users.

51. As another example of barriers present on Defendants' Website, there are several occurrences of links to documents in either PDF or other inaccessible formats which cannot be competently read by screen readers.  This includes, but is not limited, to specific information relating to Defendants' services, goods, promotions and/or offers, which are not fully accessible to visually impaired screen readers.  In general, unless authored with accessibility in mind, documents in PDF or other inaccessible formats often have accessibility issues. Additionally, such documents are typically viewed using a separate application or plug-in, and can thus cause confusion and navigation difficulties.  In fact, the text that is accessible in such documents is presented in a confusing, scattered manner to screen reader users, not readily allowing navigability and creating significant barriers to access.

52. Finally, as another example of barriers present on Defendant's Website, there are several occurrences where functions cannot be performed using a keyboard and screen reader.  This includes, but is not limited, to sections concerning specific information relating to Defendants' services, goods, promotions and/or offers, which are not fully accessible to visually impaired screen readers.

53. Due to Defendants' Website inaccessibility, visually impaired customers of Defendants cannot independently investigate services and programs offered by Defendants via the Internet as sighted individuals can and do.

54. Defendants' Website thus contains significant access barriers which deny full and equal access to Plaintiff, and Class Members, who would otherwise use their Website and who would otherwise be able to fully and equally enjoy the benefits and services of Defendants' brick-and-mortar location(s).

55. Unless Defendant remedy the numerous access barriers on its Website, Plaintiff and Class Members will be unable to visit Defendant's physical locations in person to purchase goods and/or use services offered by Defendant at its physical locations. At all relevant times, Plaintiff and Class Members intended to visit Defendant's physical locations to purchase goods and/or use services offered by Defendant at its locations but has been unable to do so given the numerous access barriers which exist on Defendant's Website.

56. Prior to filing this lawsuit, Plaintiff communicated with Defendant to provide Defendant with the opportunity to cure and remedy the Website violations. Because Plaintiff's goal was to make sure that Defendant would make the required changes to its Website in order to accommodate visually-impaired individuals, such as Plaintiff, she provided Defendant with several months to assess her claims prior to filing a lawsuit. In this way, she also provided Defendant with legal notice in advance of filing a lawsuit. *See Koebke v. Bernardo Heights Country Club*, 36 Cal.4th 824, 854 (2005) (holding that evidence of disparate impact [may] be probative of intentional discrimination). Specifically, in July 2024, a detailed letter was mailed on behalf of Plaintiff to Defendant advising Defendant of the communication barriers that exist on its Website.

Nonetheless, and despite these efforts by Plaintiff, Defendant effectively ignored all of Plaintiff's feedback, forcing Plaintiff to seek legal action.

57. Plaintiff has personally patronized Defendants' Website in the past, and intends to continue to patronize Defendants' Website. However, unless Defendant is required to eliminate the access barriers at issue, and required to change their policies so that access barriers do not reoccur on Defendants' Website, Plaintiff will continue to be denied full access to the Website as described, and will be deterred from fully using Defendants' Website.

58. Specifically, the last time Plaintiff attempted to do business with Defendants using their Website was in late 2024, and Plaintiff still encountered barriers to access on their Website. Despite past and recent attempts to do business with Defendants on their Website, the numerous access barriers contained on the Website and encountered by Plaintiff have denied Plaintiff full and equal access to Defendants' Website. Plaintiff, as a result of the barriers on the Website, continues to be deterred on a regular basis from accessing Defendant's Website. Likewise, based on the numerous access barriers Plaintiff has been precluded from the full and equal enjoyment of services offered in Defendants' physical location.

59. If Defendant's Website was equally accessible to all, Plaintiff and Class Members could independently navigate the Website, review its goods and/or services, and find other information relating to Defendants' services, as sighted individuals do.

60. Through her many attempts to use Defendants' Website, Plaintiff has actual knowledge of the access barriers that make these privileges or services inaccessible and independently unusable by blind and visually-impaired people.

61. There are readily available and easy to implement guidelines, available to Defendant on the Internet, for designing, constructing and maintaining websites to be accessible to blind and visually-impaired persons. Other large business entities have used these guidelines, or have otherwise been able, to make their websites accessible, including but not limited to: adding alt-text to graphics, including labels for each form control and text for all links, providing alternatives to inaccessible documents and ensuring that all significant functions can be performed using a keyboard.  In addition, incorporating these basic changes and adding certain elements to Defendants' Website accessibility would not fundamentally alter the nature of Defendants' business nor would it result in an undue burden to Defendants.

62. Because maintaining and providing a website where all functions can be performed using a keyboard, would provide full, independent and equal accessible to all consumers, Plaintiff alleges that Defendants have engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a.  Construction and maintenance of a Website that is inaccessible to visually-impaired individuals, including Plaintiff;

b. Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

c. Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers.

63. Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause the Website to become and remain accessible, Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

64. Although Defendant may currently have centralized policies regarding the maintenance and operation of their Website, Defendant lacks a plan and policy reasonably calculated to make the Website fully and equally accessible to, and independently usable by, the visually impaired.

65. Without injunctive relief, Plaintiff and Class Members will continue to be unable to independently use the Defendant's Website in violation of their rights.

## V. CLASS ACTION ALLEGATIONS

66. Plaintiff, on behalf of herself and all others similarly situated, seeks to certify a California class under California *Code of Civil Procedure* section 382 and California *Civil Code* section 1781, initially defined as follows:

All legally blind individuals in the State of California who have attempted to access Defendant's website by the use of a screen reading software during the applicable limitations period up to and including final judgment in this action.

67. Excluded from the Class are Defendant's officers, employees, agents or affiliates, and any judge who presides over this action, as well as past and present employees, officers and directors of Defendants.   Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

## A.    Commonality

68. There are questions of law and fact that are common to the claims of Plaintiff. Among these common questions are the following:

(a)  Whether Defendant's Website is inaccessible to the visually-impaired who use screen reading software to access internet websites;

(b) Whether Plaintiff and Class Members have been unable to access the Website through the use of screen reading software;

(c) Whether the deficiencies in Defendant's Website violate the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq*.;

(d) Whether the deficiencies in Defendant's Website violate the California Unruh Civil Rights Act, California Civil Code § 51 *et seq*.;

(e)   Whether, and to what extent, injunctive relief should be imposed on Defendant to make the Website readily accessible to and usable by visually-impaired

individuals;

(f) Whether Plaintiff and Class Members are entitled to recover statutory damages with respect to Defendant's wrongful conduct; and

(g) Whether further legal and/or equitable relief should be granted by the Court in this action.

**B.    Numerosity**

69. The members of the Class are so numerous that separate joinder of each member is impracticable. While the exact number and identities of other Class Members are unknown to Plaintiff at this time, Plaintiff is informed and believe that there are thousands of Members in the Class. The Members of the Class are so numerous that joinder of all Members is impracticable, and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court.

**C.    Typicality**

70. Plaintiff and Class Members' claims are typical of the claims of Members of the Class as all Members of the Class are similarly affected by Defendant's wrongful conduct, as detailed herein.

71. Upon information and belief, there has never been a prior lawsuit certified as a class on behalf of Plaintiff based on the allegations in this Complaint.

**D.    Adequacy of Representation**

72. Plaintiff will fairly and adequately protect the interests of the Class and are

committed to the vigorous prosecution of this action. They have retained competent counsel, experienced in litigation of this nature, to represent them and members of the Class.  There is no hostility between Plaintiff and the unnamed Class members.  Plaintiff anticipates no difficulty in the management of this litigation as a class action.

73. To prosecute this case, Plaintiff has chosen the law firm of Beverly Hills Trial Attorneys, P.C., whose attorneys have represented plaintiff in class actions and as private attorneys general in bringing public interest actions.

**E.    Superiority**

74. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class Members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Members of the Class to individually seek redress for the wrongful conduct alleged herein. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action. If Class treatment of these claims were not available, Defendants would likely unfairly receive thousands of dollars or more in improper revenue.

75. The class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiff does not foresee any issues in the

management of this litigation which would preclude the maintenance of this matter as a

Class action.

76. The prosecution of separate actions by Members of the Class would create a risk

of establishing inconsistent rulings and/or incompatible standards of conduct for

Defendant. Additionally, individual actions may be dispositive of the interest of all

Members of the Class, although certain Class Members are not parties to such actions.

77. Defendant's conduct is generally applicable to the Class as a whole and Plaintiff

seek, inter alia, equitable remedies with respect to the Class as a whole. As such,

Defendant's systematic policies and practices make declaratory relief with respect to the

Class as a whole appropriate.

## **FIRST CAUSE OF ACTION**
### **Violation Of The Americans With Disabilities Act**
### **(42.S.C. § 12181, *et seq*.)**

78. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and

each and every other paragraph hereafter necessary or helpful to state this cause of

action as though fully set forth herein.

79. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12181 *et seq*., provides: "No

individual shall be discriminated against on the basis of disability in the full and equal

enjoyment of the goods, services, facilities, privileges, advantages, or accommodations

of any place of public accommodation by any person who owns, leases (or leases to), or

operates a place of public accommodation." 42 U.S.C. § 12182(a).

80. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also

includes, among other things: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations"; and "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii). "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." 28 C.F.R. § 36.303(a). In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii). Defendant's location is a "public accommodation" within the

meaning of 42 U.S.C. § 12181 *et seq*. Defendants generate significant revenue, either directly or indirectly, from access to their Website.  Defendant's Website is a service provided by Defendants that is not fully accessible to patrons who are blind or visually-impaired like Plaintiff. This inaccessibility denies visually impaired customers full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that Defendant makes available to the non-disabled public. Defendant is violating the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*., in that Defendant denies visually impaired customers the services, privileges, advantages, and accommodations provided by https://www.missionbayresort.com/ and all subgroups of its webpages. These violations are ongoing.

81. Defendant's actions constitute intentional discrimination against Plaintiff and the Class Members on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. in that: Defendants have constructed a website that is inaccessible to Plaintiff and the Class Members; maintain the website in this inaccessible form; and have failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

82. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

**SECOND CAUSE OF ACTION**
**Violation of Unruh Civil Rights Act**
**(California Civil Code §§ 51, 52, *et seq*.)**

83. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph hereafter necessary or helpful to state this cause of action as though fully set forth herein.

84. The Unruh Civil Rights Act guarantees, *inter alia*, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the state of California. *See* Cal. Civ. Code § 51(b).

85. Defendant owns, operates, supervises, and/or manages hotels, which provide services to the general public in California and elsewhere.  Defendant's business establishment is within the jurisdiction of the state of California, and as such are obligated to comply with the provisions of the URCA, California Civil Code §§ 51, *et seq.*

86. Upon information and belief, Defendant generates significant revenue, either directly or indirectly, from access to their Website. Defendant's Website is a service provided by Defendant that is not fully accessible to patrons who are blind or visually-impaired like Plaintiff.  This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.  Defendant is violating the UCRA, Civil Code §§ 51, *et seq.*, by denying visually-impaired customers the goods and services provided on their Website. These violations are ongoing.

87. Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code §§ 51, *et seq.*, because, among other things, (1) Defendant has constructed, maintained, owned, monetized and/or operated a Website that is inaccessible to visually impaired individuals, such as Plaintiff; (2) Defendant has opted to maintain this Website in such an inaccessible form despite well-established and readily implementable industry guidelines for making websites accessible; (3) and Defendant has failed to take action to correct and rectify these barriers even after being on notice of the discrimination that such barriers may create for visually impaired individuals, such as Plaintiff.

88. Defendant is further violating the UCRA, Civil Code §§ 51, *et seq.*, because the conduct as alleged herein violates various provisions of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, for the reasons set forth above.  Under Cal. Civ. Code § 51(f), a violation of an individual's rights under the ADA also constitutes a violation under the UCRA.  Defendant's discriminatory conduct alleged herein includes, *inter alia*, the violation of the rights of persons with disabilities set forth in Title III of the ADA and, therefore, also violates the Unruh Act. *See* Cal. Civ. Code § 51(f).

89. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.  Plaintiff is therefore entitled to injunctive relief remedying the discrimination.  Plaintiff expressly limits the cost of injunctive relief sought to $15,000 or less.

90. Plaintiff and Class Members are also entitled to statutory minimum damages pursuant to UCRA, Civil Code § 52 for each and every offense. Plaintiff hereby expressly limits the total and cumulative amount Plaintiff seeks for all offenses to a total of $34,999 or less.

91. Plaintiff and Class Members are further entitled to reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant, as follows:

A. For an Order certifying the Class as defined herein and appointing Plaintiff and her Counsel to represent the Class;

B. A preliminary and permanent injunction pursuant directing Defendant to comply with the Americans with Disability Act and the Unruh Civil Rights Act, and requiring Defendants to take the steps necessary to make https://www.missionbayresort.com/, and all of the webpages and urls contained therein readily accessible to and usable by visually impaired individuals;

C. For an award of all appropriate damages to Plaintiff and the proposed Class members, including but not limited to statutory damages, general damages and treble damages in amounts, according to proof;

D. For attorneys' fees and expenses, and costs of suit pursuant to all applicable laws;

E. For pre-judgment interest to the extent permitted by law;

F. For such other and further relief as this Court deems just and proper.

## __DEMAND FOR JURY TRIAL__

Plaintiff, on behalf of herself and all others similarly situated, hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

Dated: November 20, 2024        **BEVERLY HILLS TRIAL ATTORNEYS, P.C.**


_/s/ Azar Mouzari_
Azar Mouzari, Esq.
Attorney for Plaintiff
and the Proposed Class